Good morning, your honors. May it please the court. My name is Colin Stevens, representing the appellant, John Russell Howald, in this case. I would be reserving two minutes of my time. Very well. Your honors, in one of my favorite TV shows, one of the main characters stands up in the middle of court, or in the middle of the office, and says, I declare bankruptcy. And then immediately there's a cutaway to one of the smarter characters who says, it doesn't work like that. You don't just get to shout it out. And in this case, that's what Congress did with its interstate commerce authority and the Hate Crimes Prevention Act. And it's this court's job to tell Congress that you don't just get to shout it out like that. Now, is your argument inconsistent with our existing case law? I would say generally, although I would posit that your current case law is largely inconsistent with Lopez and Assuming I don't win here, I would absolutely agree with that, sir. So Mr. Howald was essentially convicted of an intrastate crime. It's hard, your honor. I apologize. An intrastate crime that is traditionally and almost exclusively the power of the state. And to get there, we look at Morrison. Morrison tells us that, and tells this court, that intrastate violence is not directed, that is not directed at the instrumentalities of channels or goods involved, and interstate commerce has always been the province of the states. And that there's no better example of police power, which the founders denied the national government and reposed in the states, than the suppression of violent crimes and the vindication of its intentions were at protecting these categories of victims that are in there. It's just not something Congress can do under the Commerce Clause. There may be other congressional authority that it can do it, maybe through the spending power, I don't know. But through the Interstate Commerce Clause, the authority is just not there. So Mr. Howald was convicted after a trial and he was indicted essentially under two theories under Section 249. A, that he used a firearm, and B, that his actions otherwise affected interstate commerce. At trial, the evidence that came out was that really there was no effect on interstate commerce. This tiny town of Basin, Montana experienced the shooting and just sort of went on about its merry way. So... You're fighting 20 years, 30 years, 40 years of case law. With the exception of Morrison and Lopez, I think in this court I would agree with that. But I think, I mean, at the end of the day, where Mr. Howald's case shook out, and there was no sort of effect on interstate commerce, certainly not a substantial effect that's required by the Lopez decision, all it came down to was, did he use the firearm? And if that is enough to bestow sort of... A firearm that's traveled in interstate commerce. Yes. And if that's enough to bestow sort of jurisdiction for the federal courts, the Lopez decision would have been decided the other way, right? Because Lopez was specifically a gun regulation. And... But in Lopez, did the statute have the jurisdictional hook? It did not. I mean, hasn't, isn't that the distinction our court has made? It, I think what Lopez says is it can, the Congress may include a jurisdictional hook. It lists a variety of other things that courts should look at to find, to determine if, you know, the statute is a legitimate exercise of commerce power. Whether the activity that's being regulated is actually a commercial one, right? So that was absent in Lopez. I think they were very clear that possessing a firearm regardless of where it's been in its life is not inherently a commercial activity. So the presence of a jurisdictional hook or a jurisdictional element within the statute itself, I don't think automatically, again, just allows Congress to say commerce clause, therefore this regulation is constitutional. I appreciate what you're saying because what you're saying is that otherwise any gun crime in the United States effectively could be in federal court. Absolutely. The problem I think you have, and I'm going to go back to Judge Fletcher's point, you have cases like Alderman, that's a problem for you. It is. Okay. So, so we have great powers, but limited powers as a three-judge court. How do we get around Alderman and all the felon in possession cases? Like what, body armor cases, like get us there. I mean, I think you get, you just go back to the bare essentials of what Lopez is. Right. But you know, we can't, the problem is, I guess the same, we can't, I don't mean to cut we can't do that. So if what you're saying is this case has to go on bonk, then I understand your argument. If your argument is, no, here's why Alderman doesn't control, or here's why the felon in possession cases are different, then maybe you got something to work with. But if it's just go back to, we're past those cases in the ninth circuit, unfortunately for your client. Which cases, Your Honor? Like Morrison and Lopez. I mean, obviously those control, but we have cases interpreting those cases like Alderman. So can you get us around Alderman? Yeah. I mean, I can get you, I can get you around Alderman in the sense that Alderman was a body armor case. Right. And so now we have, and again, this isn't going to help this particular panel, but to the felon in possession cases, we're, I'm not even sure those cases are standing anymore. Right. Post Bruin and the, the new Bruin textural analysis. So because we're dealing specifically with a gun in this case and not some sort of non protected by the second amendment article, that to me is also a distinction. I don't know if it gets you over Alderman, but there is a wave of, you know, law that's coming definitely down from, from Washington that is going to undermine this nexus between firearms and the commerce clause as a whole. Could you please explain to me why Bruin has anything to do with the interstate commerce jurisdictional hook? It doesn't, Your Honor. I'm just, I was just trying to say, sort of distinguish what Alderman does with the, with this wave of case law that's coming. You know, our colleague, Bill Canby had an expression, maybe still uses it of, I'm not going to race the Supreme court to the corner. If, if this wave of cases gets us that way, the Supreme court is going to have to get there first. I, I, I don't disagree with that. I mean, I think again, if I lose here today and sort of there's some writing on the wall here, right? It's might be my first step in a much longer journey. But again, I just, what makes this case unique is the way the evidence played out, right? There's, we did not have an individual or a victim who was acting in a sort of interstate commerce capacity that just did nothing to affair with her, interfere with her employment. There was just no evidence of interstate commerce. So all it comes down to is that gun. And again, I get it. But I think just with Lopez, with Morrison, coupled with Bruin, this is, this is the Hate Crimes Prevention Act, at least as it sort of falls under that fourth prong that it, what otherwise affects commerce is simply inconsistent with Lopez's requirement that the regulations substantially affect commerce. Do you want to reserve? I do. Thank you, Your Honor. Good morning, Your Honors, and may it please the court. Janay Lamar for the United States. The circuit's precedent answers the questions in this appeal. Section 249 is constitutional because it criminalizes violence done through the, through the use of weapons that have traveled in interstate and foreign commerce. That statute is constitutionally applied to Howell's attempt to rid the town of Basin, Montana, of its gay and lesbian community through the use of weapons originating from Russia, Romania, Texas, and Connecticut. Section 249 also qualifies as a crime of violence because it requires proof that the defendant attempted through the use of a dangerous weapon to kill and cause bodily injury. Because Howell's arguments today and in this appeal goes in stark contrast to this court's precedent, this court should affirm. As this court was, or this panel was just discussing with opposing counsel, Alderman does answer this question. This court held there that any statute that has as an element requiring proof that the weapon moved in interstate or foreign commerce is sufficiently tied to the commerce clause. And that's the end of the inquiry. There is no, if the court were to look at the Lopez and Morrison construct, there is no conflict there. Contrary to what opposing counsel has discussed in discussing Lopez and Morrison, the Supreme Court in both cases acknowledged the constitutional significance of jurisdictional elements like that in Section 249. In Morrison, the court specifically noted that the, while the civil provision of the Violence Against Women's Act was unconstitutional, the criminal provision was not. In Note 5, the court noted that the criminal provision of the Violence Against Women's Act had a jurisdictional element that required proof of some interstate connection. And every court has upheld, and the to consider the criminal provision has upheld that provision as constitutional because of that element. Additionally, as to Lopez, Lopez specifically said that the Gun-Free School Zones Act was different from statutes that had an element requiring commerce proof. And after Lopez, the Lopez opinion was issued, Congress amended the Gun-Free School Zones Act to add in a jurisdictional element requiring such proof that the weapon had traveled in interstate or foreign commerce. And every court, including this court in its 2005 Dorsey opinion, has upheld that statute as constitutional because of the element. Did you actually prove that it had traveled in interstate commerce? Yes, Your Honor. How did you prove that? There were agents that testified to where the weapons originated based on the serial numbers and identifying details for the weapons and the ammunitions. And it was uncontested that they originated in these very places. So if I want to be a criminal and be charged only under state law, I've got to figure out, I've got to move to a state that manufactures weapons, buy the weapons in that state, then I'm okay. Or rather, I'm okay under federal law. In that instance, the court looks at, in fact, other elements. So for example, in Section 249, there's different ways to satisfy the commerce element. One is using a weapon that has traveled in interstate commerce. Another is to otherwise affect interstate commerce. And the Supreme Court's jurisprudence is clear, and this court's jurisprudence is clear, is that even if you use a weapon that is intrastate, that can still nonetheless have an effect on the interstate market. That's what the Supreme Court found in Raich when it was discussing homegrown marijuana, nonetheless affected the supply and demand of the interstate market and thus affected the interstate commerce. But we don't need to go so far in this case. Absolutely not. The Commerce Clause requires that, as the Supreme Court has said, that there be some proof of interstate commerce. That proof can be minimal, as this court said in Hanna. Morrison did not change that that minimal nexus is all that's required, and the existence and the fact that these weapons traveled in interstate and foreign commerce is sufficient. It is also sufficient to ensure that the statute is constitutionally applied to Howell, where, as we've discussed, he used weapons that had traveled in interstate and foreign commerce. And I take it that the jurisdiction element here is the same, effectively, seen in sex trafficking cases, for example, where you show the camera, the video equipment used to take pictures of a minor engaged in a sex act. That's what gives us the federal jurisdiction hook. It's the same principle. Exactly. And Howell's argument, if you take it to its logical conclusion, disrupts all sorts of federal criminal statutes, including sex trafficking, as Your Honor has mentioned, the Sex Offender Registrations Act. And that's because, as the Sixth Circuit has held, the jurisdictional element is the touchstone of valid congressional action in using its Commerce Clause power. And so in this court, this court would have to review its felon possession jurisprudence, as it detailed in Hanna. It's jurisprudence discussing the statute that prohibits those who have domestic violence protective orders against them from possessing This is how the federal criminal code works. If there is an element that requires proof that some component of the crime or the crime itself was either in or affecting interstate commerce, that is sufficient because that is the scope of the Commerce Clause. Turning to Section 249's qualification as a crime of violence, just briefly, this court's precedent also controls there. The statute is a crime of violence because it requires proof that the defendant attempted, through the use of a dangerous weapon, to cause bodily injury or to kill. The first question that you have to answer in this categorical approach is what offense Howell was convicted of, and this court's precedent is clear that Section 249 is a divisible offense, and there is one specific offense listed in 249 that he was convicted of. He was convicted of the attempt, the use of a dangerous weapon, to cause bodily injury. That is distinct from other listed in Section 249, including the willful causation of bodily injury, including an offense that results in death. It requires different elements. The willful causation of bodily injury does not require the use of a weapon. It has a different sentencing. If you attempt to kill somebody, the statutory max is life imprisonment, whereas for willful causation of bodily injury, it's 10 years, and so in line with this court's precedent and Dorsey and Linen, obviously, Section 249 is divisible, and if we were to look at the divided offense that he was convicted of, that is categorically a crime of violence. First, he does not argue otherwise. He does not address the divided offense that he was convicted of, and second, this court's precedent is clear. This court has held repeatedly that attempts to kill and hear in them the force requisite to be a crime of violence. This court held that in Dorsey and Studhorse and Buck. This court has also repeatedly held that offenses that require use of a weapon inhere in them the force to be a crime of violence. This court in Buck said that the use of a weapon transforms the force into the violent force sufficient for that categorization, and even if it weren't divisible, this court has also repeatedly rejected the idea that a statute requiring proof of bodily injury does not inhere in it the force requisite to be a crime of violence. Was there evidence that the woman was home when he shot at the house? Yes, Your Honor. She was home. She was in the bathroom right behind the room where the bullet lodged. Because this court's precedent compels this court to reject Howell's arguments, the United States asks that this court affirm his conviction. Thank you. Thank you, counsel. Your Honor, I'm not going to buck for those extra credit points. I'm just going to add one thing. It's regarding the element provision. The problem with the element provision in this case, the element that ostensibly gives the court the jurisdictional hook or gives Congress the jurisdictional hook, is that the element itself doesn't muster up to what Lopez requires. Simply having an element in there that says otherwise affects interstate commerce is not how the U.S. Supreme Court described what Congress needs. The Lopez court used the phrase substantially twice in its third category, and that the local activity that's being sought to be regulated has a substantial relation to or substantially affects commerce, not otherwise affects commerce. So I think the element in this case and in this statute, again, it falls short of what's required in Lopez. So I will leave you with that and thank the court for its time. Thank you, counsel, for your argument. Thanks to both of you for a fine argument and very good briefing this case. Much appreciated. This case is submitted. We'll move on to the next one on calendar.
judges: FLETCHER, BEA, OWENS